## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-61365-BLOOM/Valle

SOUTHPOINT CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

      Defendant.

_____/

### ORDER ON MOTION FOR LEAVE TO AMEND
### ANSWER AND AFFIRMATIVE DEFENSES

**THIS CAUSE** is before the Court upon Defendant Lexington Insurance Company's

("Defendant") Motion for Leave to Amend Its Answer and Affirmative Defenses, ECF No. [22]

("Motion"). Plaintiff Southpoint Condominium Association, Inc. ("Plaintiff") filed its Response

in Opposition, ECF No. [23] ("Response"), to which Defendant filed its Reply, ECF No. [28]

("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case,

the applicable law and is otherwise fully advised. For the reasons set forth below, the Motion is

granted.

### I.      BACKGROUND

This matter stems from a lawsuit Plaintiff initiated in the Seventeenth Judicial Circuit in

and for Broward County, Florida against Defendant on May 16, 2019. ECF No. [1].

According to the Complaint, ECF No. [1-2], Plaintiff suffered physical damage to its

property due to high winds from Hurricane Irma in September 2017. *Id.* at ¶ 6. During the relevant

time period, Defendant insured Plaintiff under a commercial property coverage insurance policy.

*Id.* at ¶ 4. Plaintiff alleges that the wind/hurricane damages to the property are covered under the policy. *Id.* at ¶ 7. After Plaintiff applied for insurance benefits for the damages, Defendant allegedly "accepted coverage for Plaintiff's claim, but it failed to pay the full amount of benefits Plaintiff is entitled to receive for this loss." *Id.* at ¶ 9. Plaintiff asserts that it has not received the "full cost of repair of the damage to the property, including but not limited to, complete repair to the structure, emergency services, and all other coverages afforded by the policy for this loss." *Id.* at ¶ 15. Plaintiff alleges a single count of breach of contract based upon Defendant's failure to pay the full benefits due and owing under the insurance policy. *Id.* at ¶¶ 11-17.

On May 31, 2019, Defendant filed its Notice of Removal, ECF No. [1], pursuant to 28 U.S.C. §§ 1441 and 1446, removing the pending lawsuit to this Court on diversity jurisdiction. On June 7, 2019, Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint, ECF No. [7] ("Answer and Affirmative Defenses"), in which it asserted ten affirmative defenses. The Court's Scheduling Order, ECF No. [11], established August 24, 2019 as the deadline for all motions to amend pleadings and March 24, 2020 as the deadline for all discovery to be completed. With this background and deadlines in square view, Defendant now moves this Court for leave to amend its Answer and Affirmative Defenses to assert additional affirmative defenses because of Plaintiff's alleged breach of the policy's "Concealment, Misrepresentation or Fraud" provision.[1] ECF No. [22] at 7.

The Motion represents that leave to amend is warranted because of "recently discovered evidence indicating that Plaintiff breached the Policy's 'Concealment, Misrepresentation or Fraud'

---

[1] The "Concealment, Misrepresentation or Fraud" provision provides that coverage "is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning: 1. This Coverage Part; 2. The Covered Property; 3. Your interest in the Covered Property; or 4. A claim under this Coverage Part." *See* ECF No. [22-1] at 7-8.

provision by misrepresenting the cause and extent of its alleged damages." *Id.* at 1. Before the lawsuit was filed, Defendant's consultants inspected the property at issue but determined that the alleged damages were not caused by Hurricane Irma winds and that the majority of the claimed damage pre-existed Hurricane Irma. *See id.* at 2. In response, Plaintiff's adjuster, GlobalPro, retained an engineering firm, Falcon, to determine the cause and scope of the damage caused by Hurricane Irma, and a construction consultant firm, DSS, to determine the cost of repairs. *Id.* In October 2018, Defendant received a report from Falcon dated August 22, 2018, *id.* at ECF No. [22-2] ("August Falcon report"), and an estimate from DSS, *id.* at ECF No. [22-3]. These records were submitted by GlobalPro to Defendant to support the damages to the property from Hurricane Irma totaling approximately $29.5 million. ECF No. [22] at 2-3. Defendant nonetheless did not pay the full claim submitted by Plaintiff. Consequently, Plaintiff initiated the instant lawsuit. *Id.* at 3.

During discovery, Defendant served subpoenas on non-parties, Falcon and DSS, and received certain documents and records that Plaintiff did not disclose as part of its discovery responses. *Id.* Specifically, a March 23, 2018 report from Falcon, ECF No. [22-4] ("March Falcon Report"), and an email dated April 4, 2018 between DSS employees purporting to express GlobalPro's concern with the March Falcon Report, ECF No. [22-7]. Defendant states that due to Plaintiff's failure to disclose the March Falcon Report, Defendant was unaware of its contents when Plaintiff and GlobalPro were deposed in December 2019. ECF No. [22] at 4. Defendant further adds that although it was aware in December 2019 that GlobalPro had received a draft Falcon report prior to the date listed on the version sent to Defendant, ECF No. [22-8], Defendant's inquiries into this issue at GlobalPro's deposition did not reveal the existence of the March Falcon

Report nor substantive changes between the August Falcon Report and a prior version. ECF No. [22] at 4.

According to Defendant, the new discovery depicts that "dramatic revisions were made" to the March Falcon Report, which revisions ultimately were reflected in the August Falcon Report that Defendant received. *Id.* In particular, Defendant states that (1) the March Falcon Report attributes certain claimed damage to deterioration and corrosion, which causes do not appear in the August Falcon Report, (2) the March Falcon Report attributes damage in certain photographs to corrosion and deterioration without mentioning wind damage but the August Falcon Report contains the exact same photographs and attributes the same damages entirely to wind, and (3) the March Falcon Report recommends re-caulking windows while the August Falcon Report recommends replacing the windows. *Id.* at 4-5. Defendant represents that the changes made to the March Falcon Report inflated the insurance claim and downplayed that much of the damage was due to pre-existing conditions rather than Hurricane Irma. *See id.* at 5.

Defendant further alleges that Plaintiff knew—but did not disclose to Defendant in its interrogatory responses—that pre-Hurricane Irma, the subject property had suffered various damages to the premises' roof, windows, and doors and that Plaintiff had initiated a lawsuit against a roofing contractor relating to those prior issues. *See id.* at 5-6. Similarly, Defendant states that it received from DSS a roofing assessment report prepared for Plaintiff in September 2013 identifying certain problems with the roofs, ECF No. [22-13], but Plaintiff did not produce this report to Defendant in discovery. ECF No. [22] at 6. Defendant also notes that it received a post-Irma report from Plaintiff's roofing consultant, ECF No. [22-14], that concluded that the property's roofs do not need to be replaced, which conclusion stands in contrast to Plaintiff's insurance claim that all roofs need to be replaced. ECF No. [22] at 6. Defendant contends that it has discovered

repair bids, ECF No. [11], to fix the interior repairs for far less than the amount Plaintiffs claimed in damages. ECF No. [22] at 5. Additionally, Defendant represents that it has uncovered evidence of pre-Hurricane Irma issues with the windows that caused damage to the property, ECF No. [22-15], but that Plaintiff now claims these damages were caused by Hurricane Irma. ECF No. [22] at 6-7.

"In light of all the newly discovered material information," Defendant argues that leave to amend the Answer and Affirmative Defenses is warranted even though the deadline to seek leave to amend has expired. *See id.* at 7.[2] Specifically, Defendant contends that Rule 15, Fed. R. Civ. P., favors liberal amendments to pleadings, *id.* at 8, the March Falcon Report was not discovered until December 2019 because it was "improperly withheld by Plaintiff," *id.*, there has been no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies, and Plaintiff is not prejudiced by the proposed amendment because discovery has not concluded and the proposed amendment "is consistent with Lexington's previous position that the claim is overstated." *Id.* at 10.

Plaintiff responds that amendment is inappropriate because the scope and price of the alleged damages forms "the essence of this lawsuit." ECF No. [23] at 1. Plaintiff maintains that although the parties differ on the causes of the damages, amendment should not be granted because the proposed affirmative defenses are futile and are not plead with particularity. *Id.* at 2. In particular, Plaintiff challenges the language included in proposed affirmative defenses eleven, twelve, and thirteen, and argues that Defendant does not plead intent by Plaintiff to defraud Defendant. *Id.* at 2-3. Further, Plaintiff posits that Defendant mischaracterizes the differences

---

[2] The proposed amended answer and affirmative defenses is attached to the Motion, ECF No. [22-1]. In the proposed amendment, Defendant adds three additional affirmative defenses, numbers eleven, twelve, and thirteen, based on the "Concealment, Misrepresentation or Fraud" provision in the policy. *Id.*

between the March Falcon Report and the August Falcon Report and overstates the significance of the evidence mentioned in the Motion. *Id.* at 4-6.

In the Reply, Defendant asserts that Plaintiff's argument that the proposed amendments do not satisfy the particularity standard for fraud is incorrect because Defendant's proposed affirmative defenses are "contractual fraud" claims, and Plaintiff is conflating a cause of action for common law fraud with affirmative defenses regarding the policy's "Concealment, Misrepresentation or Fraud" provision. ECF No. [28] at 1-4. Defendant, thus, concludes that its proposed amendments comport with the governing pleading standard. *Id.* at 4-6. Further, Defendant maintains that the amendments are not futile and that it would be "severely prejudiced" if the Motion is denied because it would be "deprived of the right to assert affirmative defenses . . . which, if proven, expressly preclude coverage under the Policy at issue in this litigation." *Id.* at 7-9. The Motion is ripe for consideration.

## II.    LEGAL STANDARD

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Forman v. Davis*, 371 U.S. 178, 182 (1962). *See also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir.

1984) ("This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'") (citation omitted).

Under the Rules of Civil Procedure, district courts are required to enter a scheduling order that limits the time to amend the pleadings. *See* Fed. R. Civ. P. 16(b)(3). Scheduling orders may be modified only "for good cause and with the judge's consent." *See id.* at R. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note) (quotations omitted). Accordingly, when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused. *Id.* at 1418 n.2; *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [we] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Therefore, when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Id.* at 1419. First, the movant must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure. Good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee note). Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the

pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419. If the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.*

Through this lens, the Court addresses the instant Motion.

## III. DISCUSSION

Deciding whether Defendant is entitled to amend its Answer and Affirmative Defenses raises two overarching issues. The first is whether "good cause" exists pursuant to Rule 16(b) for amending the Answer and Affirmative Defenses months after the deadline set forth in the Scheduling Order, ECF No. [11], to amend pleadings had expired. The second is whether there is a "substantial reason" to deny leave to amend under Rule 15(a), such as if amendment would be futile or would cause undue prejudice to Plaintiff. The Court will address these issues in turn.

### A. Good cause for seeking leave after the Scheduling Order deadline

The Scheduling Order set August 24, 2019 as the deadline to file all motions to amend pleadings. ECF No. [11]. The lawsuit was removed to this Court on May 31, 2019, ECF No. [1], and the instant Motion was filed on January 16, 2020—approximately five months after the deadline to amend had passed.

Defendant asks this Court to excuse its untimely filing because the evidence that it relies upon to justify amending its Answer and Affirmative Defenses "was not discovered until late December 2019." ECF No. [22] at 7. Plaintiff does not assert that the Motion should be denied because it is untimely nor does it challenge Defendant's diligence in seeking the evidence at issue.

Moreover, Plaintiff does not argue that "good cause" to alter the Scheduling Order deadline is lacking.

Upon consideration, the Court finds that good cause exists pursuant to Rule 16(b)(4) to excuse Defendant's belated filing of the Motion. The documents and records relied upon by Defendant in the Motion were not disclosed by Plaintiff despite its discovery obligations but instead came to light through non-party discovery after the amendment deadline passed.[3] The Motion and the Response do not demonstrate that prior to this time, Defendant had been dilatory or had failed to actively pursue discovery from Plaintiff and non-parties. In fact, Defendant pursued leads during GlobalPro's deposition in December 2019 concerning revisions to prior versions of the August Falcon Report but did not discover the existence of the March Falcon Report nor its contents at that time. ECF No. [22] at 4 (citing ECF No. [22-9]). Additionally, the Motion was brought within weeks of Defendant discovering the documents and records at hand. Under these circumstances, good cause is satisfied. *See, e.g.*, *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 885 (11th Cir. 2016) (holding that district court "clearly" did not abuse its discretion in finding good cause and granting plaintiff's motion for leave to amend where plaintiff did not have information necessary to assert the amendment in spite of diligence until after the scheduling order amendment deadline had expired); *Warfield v. Stewart*, No. 2:07CV332-FTM-33DNF, 2009 WL 425996, at *5 (M.D. Fla. Feb. 20, 2009) (holding that plaintiff should have been granted leave to amend complaint where any delay in the amendment was caused by defendant's failure to timely produce a discovery document); *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-T-24-TGW, 2014 WL 10915507, at *3 (M.D. Fla. June 16, 2014) (finding good cause for delay in seeking leave to amend affirmative defenses where the information was revealed

---

[3] DSS, for instance, produced an email dated March 26, 2018 that transmitted the March Falcon Report to Plaintiff, ECF No. [22-5], but Plaintiff did not produce this email to Defendant.

in discovery after the answer and affirmative defenses had initially been filed and the motion was made within four weeks of learning the new information).

Accordingly, the Court will proceed to determine whether amendment is appropriate pursuant to Rule 15(a)(2), Fed. R. Civ. P.

## B.     No substantial reasons to deny leave to amend

Plaintiff does not argue, nor does the Court find, that the Motion is the result of undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. *Bryant*, 252 F.3d at 1163. The Motion is Defendant's first request to amend its pleadings and was made within a reasonable time after Defendant discovered the new evidence. Further, Plaintiff does not argue, nor does the Court find, that granting amendment would cause undue prejudice to it. *See id.* The deadline to complete discovery is March 24, 2020, ECF No. [11], and the proposed amendments appear to be "consistent with Lexington's previous position that the claim is overstated." ECF No. [22] at 10. *See also* ECF No. [23] at 3-4 (noting that the proposed amendment to the Answer and Affirmative Defenses is "based on this same position that the damages were pre-existing"). What Plaintiff argues, instead, is that the Motion should be denied because amendment is futile on the merits and that the proposed affirmative defenses do not satisfy Rule 9(b)'s particularity standard. ECF No. [23]. The Court will address each basis for denial.

### i.     *No futility of amendment*

Regarding the alleged futility, Plaintiff asserts that the allegations raised in the Motion "do not support the new affirmative defenses." *Id.* at 2. Specifically, although it concedes that changes were made from the March Falcon Report to the August Falcon Report, Plaintiff claims that the revisions (*i.e.*, omitting the words "deterioration" and "corrosion") were made to "more clearly state [Falcon's] opinion that these damages were attributable to wind" and to avoid

"misconce[ptions]" that might arise from these words. *Id.* at 4. Plaintiff further opines that there was "nothing improper or fraudulent" about GlobalPro editing the March Falcon Report for clarity, and that, although the reports note differing recommendations regarding re-caulking or replacing windows, "there is nothing fraudulent about the engineer adjusting its repair recommendations to ensure that his opinions align with all of the information he has received to date." *Id.* Additionally, Plaintiff contends that the bid repair and incurred expenses referenced in the Motion, ECF Nos. [22-10] and [22-11], in the amount of approximately $2 million do not reflect "complete work that needs to be completed at the property" and that work is "ongoing" with final costs "yet unknown." *Id.* at 5-6. Finally, Plaintiff adds that it did not reveal in its interrogatory responses the existence of a prior lawsuit concerning prior damage to the roofs because "those issues were repaired and completely resolved prior to Hurricane Irma" and "any windows that were problematic before the hurricane were re-sealed before the hurricane[.]" *Id.* at 6.

Defendant responds that its proposed amendments are not futile. ECF No. [28]. Futility, according to Defendant, occurs only when it cannot set forth a valid defense under any set of facts. *Id.* at 7-8. Defendant contends that so long as the affirmative defenses could potentially apply, a finding of futility is improper. *Id.* The Court agrees.

The burden on a party seeking to amend a pleading "is minimal" under Rule 15. *See Cohen v. Gulfstream Training Acad., Inc.*, No. 07-60331-CIV, 2007 WL 2904150, at *3 (S.D. Fla. Oct. 3, 2007) (granting defendant's motion for leave to assert a counterclaim for fraud and rejecting plaintiff's futility argument because "[a]t the pleading amendment stage, the burden on the party timely seeking amendment is minimal") (citing *Forman*, 371 U.S. at 182) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.")). *See also Waite v. AII Acquisition Corp.*, No. 15-

CV-62359, 2016 WL 2346768, at *12 (S.D. Fla. Mar. 10, 2016), *aff'd sub nom. Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) (granting motion for leave to file an amended answer and affirmative defenses and rejecting futility argument because the proposed amendments identified potential bases for alternative liability, discovery had not concluded, and the new defenses did "not alter the basic issues in this case").

Courts have found amendments to defenses to be futile where they would "necessarily fail" or are so lacking in merit on their face. *See Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670-CIV, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013) (noting that "courts have found amendments to defenses futile if they would 'necessarily fail'" and explaining that "in the context of affirmative defenses, the futility standard necessarily merges with the standard for striking defense under Rule 12(f), Fed. R. Civ. P."); *Denarii Sys., LLC v. Arab*, No. 12-24239-CIV, 2013 WL 500826, at *6 (S.D. Fla. Feb. 11, 2013) ("With respect to futility of amendment, the case law states that '[i]f . . . it is so clearly established that the [pleader] cannot, with leave to amend, cure the legal defects, leave to amend would be futile[.]'") (citation omitted). Stated differently, futility equates with "inadequacy as a matter of law. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *see also JCW Software, LLC v. Embroidme.com, Inc.*, No. 10-80472-CIV, 2011 WL 13227829, at *4 (S.D. Fla. Dec. 14, 2011) ("A defense is 'insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law.' A finding of futility, therefore, is, in effect, a legal conclusion that the proposed defense would necessarily fail.") (internal citation omitted).

Whether Plaintiff intentionally concealed or misrepresented a material fact concerning coverage or the insurance claim is disputed by the parties and inappropriate for determination at this stage. *See Chicken Kitchen US.A, LLC v. Maiden Specialty Ins. Co.*, No. 14-23282-CIV, 2015

WL 11233084, at *2 (S.D. Fla. Oct. 7, 2015) (denying motion to strike amended answer and affirmative defenses and explaining that whether an affirmative defense "will ultimately be successful is not the issue at the amended pleadings stage; the issue at the amended pleadings stage is whether the affirmative defense 'would necessarily fail'"). The Motion, however, provides sufficient evidence that Plaintiff did not timely disclose potentially adverse discovery documents and records to Defendant. These items collectively attribute a differing cause of the alleged damages and value of the subject loss than what Plaintiff initially represented in its insurance claim.[4] Therefore, while the Court makes no findings about the ultimate viability of the proposed amendments, the record supports a finding that the "Concealment, Misrepresentation or Fraud" provision in the policy may be implicated to bar coverage in this case. Given these circumstances, the Court is unconvinced that the proposed amendments are futile on their merits as that term is construed. *See Alamo-Cruz v. Evanston Ins. Co.*, No. 17-60671-CIV, 2019 WL 3531512, at *4 (S.D. Fla. Aug. 2, 2019) (rejecting futility argument for proposed fraudulent inducement affirmative defense where the allegations showed a plausible claim that plaintiffs engaged in fraudulent inducement, and stating that whether the alleged misrepresentation was material or whether reliance was justifiable involves "factual inquiries that are best reserved on either a motion for summary judgment or for the jury to decide").

---

[4] The Court also notes that Plaintiff has recently amended its answers to Defendant's interrogatory requests after Defendant filed the Motion. ECF No. [28-1]. For instance, Plaintiff originally responded "none" when asked to list all lawsuits prior to the date of loss in which the physical condition of the property was, in whole or in part, at issue, ECF No. [22-12] at interrogatory 2, but Plaintiff now lists two lawsuits. ECF No. [28-1] at interrogatory 2. Plaintiff additionally previously stated that its total monetary damages were approximately $27 million, ECF No. [22-12] at interrogatory 22, but it now states that its total damages are "[u]ndetermined at this time" because it is awaiting final reports from experts and contractors. ECF No. [28-1] at interrogatory 22.

## ii.    *The proposed amendments are adequately pled*

Regarding the particularity argument, Plaintiff claims that the proposed amendments are not pled with the "appropriate degree of particularity required to assert a fraud defense." ECF No. [23] at 2. Specifically, Plaintiff asserts that the amendments do not satisfy Rule 9(b) because they "fail to allege who made the fraudulent statements, what was said, when the statements were made, or how the statements misled the Defendant." *Id.* at 7. Defendant counters that the traditional pleading requirements of Rule 9(b) do not apply to the specific affirmative defenses raised because they are "contractual fraud" claims. ECF No. [28]. Defendant further adds that Plaintiff's argument has already been rejected by another court in this district that analyzed the same insurance provision as here in a similar setting. *Id.* (citing *Nova Hills Villas Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 07-60939-CIV, 2008 WL 179878 (S.D. Fla. Jan. 21, 2008)). Moreover, Defendant maintains that Plaintiff has fair notice of the alleged fraudulent misrepresentations, *id.* at 4, and that Rule 9(b)'s pleading standards are applied less stringently when specific factual information concerning the alleged fraud is within the opposing party's control. *See id.* at 6. After review, the Court finds Defendant's arguments to be well taken.

*Nova Hills* is instructive for what allegations are deemed sufficient to assert a plausible defense under the "Concealment, Misrepresentation or Fraud" provision in the policy. In that case, plaintiff brought suit against defendant insurer for breach of contract after the insurer did not pay the full value of a claim for property damage following Hurricane Wilma. *See* 2008 WL 179878, at *1. The defendant counterclaimed for fraudulent concealment arising from a supplemental claim submitted by plaintiff that sought significantly higher amounts of damages than what was initially reported and paid by the defendant. *Id.* During its investigation, defendant discovered that the supplemental claim had been fraudulently overvalued. Specifically, plaintiff failed to disclose that

roofing repairs and replacements had been made to the property after Hurricane Wilma for far less than what the claim represented. *See id.* Further, defendant alleged that plaintiff knew the true cost of the replaced roofs at the time it made the supplemental claim but failed to disclose this or even that the roof repairs had already been conducted. *See id.* Thus, defendant concluded that plaintiff's actions violated the "Concealment, Misrepresentation or Fraud" provision. *See id.*[5] Plaintiff then moved to dismiss the counterclaim on the basis that it was not pled with sufficient particularity under Rule 9(b). *Id.* at *2.

Like here, plaintiff alleged that the counterclaim failed to satisfy the particularity standard because it did not "plead the who, what, when, where, and why of the alleged fraud." *Id.* at *4. Upon analysis, the court explained that plaintiff's argument "would have had more appeal had the counterclaim alleged a traditional common law fraud claim under Florida law." *Id.* Instead, the court noted that the counterclaim needed to be evaluated "within its unique context—a contractual fraudulent concealment claim against an insured by an insurer pursuant to the express provisions of a policy." *Id.* According to that court, "the traditional requirements of a fraud claim do not necessarily apply by the same measure to such a contractual fraud claim." *Id.* (citing *Mich. Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915 (11th Cir. 1998)). "The stated public policy rationale for this rule is that, if there is no consequence when a policyholder makes a false representation to his or her insurance company even if not relied upon, the policy provision would be rendered meaningless, which would be inconsistent with the principle that every provision in a contract is to be given meaning and effect." *Id.*

Therefore, that court reframed the issue as whether the counterclaim's allegations were sufficient to plead a fraudulent concealment claim arising under the applicable policy provision.

---

[5] Notably, defendant's fraudulent concealment claim was also raised as an affirmative defense to plaintiff's complaint. *See* 2008 WL 179878, at *2.

*Id.* at *5. In evaluating the allegations, the court rejected plaintiff's argument that the "who, what, when and why" factual allegations were insufficient, and it found that defendant's allegations adequately pled that plaintiff concealed material facts during the claims process to obtain a greater recovery on the policy. *See id.* Significantly, the court explained that the allegations are "factual and specific, not merely conclusory" and that the insured "is clearly on notice of the alleged fraudulent concealment in order to defend against it. The 'who' was the insured, the 'what' was the supplemental policy claim, the 'when' was after the repairs were already conducted, and the 'why' was to obtain more than what the insured was entitled to under the policy." *See id.* Accordingly, the court denied the motion to dismiss and concluded that "[a]s a matter of pleading, there are no material allegations that are missing from the Counterclaim" and that from what was alleged, "a sufficient interference of fraud-as per the parties' contract-has been pled consistent with Rule 9(b)." *Id.*

Under the guidance of *Nova Hills*,[6] the Court finds that the proposed amendments satisfy the pleading standards to set forth valid contractual fraud affirmative defenses under the policy provision. Rule 9(b)'s particularity requirement "differ[s] from case to case" and must be read in conjunction with Rule 8's notice pleading requirements. *See id.* at *3. Fair notice, thus, is the most basic consideration underlying Rule 9(b). *See Guarantee Ins. Co.*, 2013 WL 4496510, at *6-7. Plaintiff's allegations satisfy this threshold.[7] Specifically, Plaintiff is on notice of the alleged

---

[6] The Court agrees with Defendant that *Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49 (D. Conn. 2008) is inapplicable. That decision is neither binding nor persuasive, and it does not address a contractual fraud claim generally, the "Concealment, Misrepresentation or Fraud" provision specifically, or affirmative defenses.

[7] Rule 9(b) is applied less stringently when "specific factual information [about the fraud] is peculiarly within the [other party's] knowledge or control." *See Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003); *see also United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) ("Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant."). Plaintiff

misrepresentations made during the claims process—the documents and records analyzed in the Motion—and the specific bases of the misrepresentations—the differing causes of the damage and value of the insurance claim—so as to satisfy the "who, what, when and why" of the fraud inquiry. *See also Mazel Investments, LLC v. Axa Corp. Sols. Excess & Surplus Lines Ins. Co.*, No. 609-CV-1410-ORL31GJK, 2010 WL 996539, at *1 (M.D. Fla. Mar. 17, 2010) (denying motion to strike "Concealment, Misrepresentation and Fraud" provision affirmative defense and explaining that Rule 9(b) is inapplicable because "the allegations in that defense do not sound in fraud" but rather in voiding coverage "due to Plaintiff's intentional *concealment* of material facts") (emphasis in original).

Because (1) this circuit embraces a policy of granting liberal amendments, (2) the Federal Rules of Civil Procedure dictate that leave should be given freely when justice so requires, (3) Defendant would be prejudiced if the Motion was not granted, and (4) there being no "substantial reason" to deny the Motion, the Court finds that Defendant has carried its burden under Rule 15(a)(2) and Rule 16(b)(4), Fed. R. Civ. P.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Leave to Amend Its Answer and Affirmative Defenses, **ECF No. [22]** is **GRANTED**. Defendant shall file its Amended Answer and Affirmative Defenses by February 12, 2020.

---

did not produce the March Falcon Report to Defendant nor other evidence listed in the Motion. In fact, Defendant discovered the materials after the amendment deadline only through non-party discovery. Under these circumstances, the Court does not agree with Plaintiff that the ordinary heightened pleading standard for Rule 9(b) fraud claims applies with full force nor that the proposed amendments fail to support an affirmative defense founded on the subject policy provision.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 10, 2020.

BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record