UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-61365-BLOOM/Valle

SOUTHPOINT CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Preclude Plaintiff's Cost Expert, Paul J. Del Vecchio, from Offering Opinion Testimony on the Scope of Wind Damage and to Limit Plaintiff's Claimed Damages to Areas Its Engineer Identified as Damaged by Wind, ECF No. [54] ("Motion"). Plaintiff filed a response in opposition, ECF No. [57] ("Response"), to which Defendant filed a reply, ECF No. [62] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.      BACKGROUND

The Court assumes the parties' familiarity with the facts of this case. *See* ECF No. [69]; *see also* ECF No. [45] (Order denying Defendant's motion to strike Plaintiff's expert disclosures). The condominium towers were allegedly damaged in September 2017 by Hurricane Irma. According to Defendant, more than two years after the loss, Plaintiff retained Federico Balestrazzi ("Mr. Balestrazzi") to determine the "cause and extent of damage" to the buildings and Paul J. Del

Vecchio ("Mr. Del Vecchio") to determine the cost of repairs. ECF No. [54] at 1-2.[1] Defendant represents that these individuals (and their firms) personally inspected a fraction of the units at the towers, which inspections did not occur until February and March 2020. *Id.* at 2. Defendant now moves (1) to preclude Plaintiff's cost expert, Mr. Del Vecchio, from testifying about the scope of damage caused by wind and (2) to limit Plaintiff's recoverable damages to damages that its engineer, Mr. Balestrazzi, determined were caused by wind. *Id.* at 1.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers

---

[1] Defendant cites to ECF No. [39-1] to support the alleged areas of opinion testimony for the experts. *See* ECF No. [54] at 3. However, that document only reflects Mr. Balestrazzi, who was "retained to provide an opinion on the cause of damage to Southpoint's buildings and components." ECF No. [39-1] at 3. Mr. Del Vecchio was reportedly retained to "provide an estimate and an opinion on the scope, extent, and amount of Plaintiff's damages." ECF No. [44-2] at 2.

to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be *qualified* "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[2]

When determining whether an expert's testimony is *reliable*, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, *helpfulness*, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter*

*Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

### A.     Mr. Del Vecchio is qualified to testify regarding the scope of damage caused by wind

According to Defendant, Mr. Del Vecchio is not qualified to provide testimony regarding the scope of damage caused by wind because he is not an engineer, architect, or other design professional. ECF No. [54] at 2, 5-6. Rather, Mr. Del Vecchio is "a high school graduate with experience in the construction industry. He does not have the scientific training, license or degree necessary to distinguish between damages caused by wind and those caused by wear and tear, deterioration, and/or improper maintenance. Without an engineer first identifying the scope of damage caused by wind, [Mr.] Del Vecchio cannot identify the cost of repairing that damage. Since [Mr.] Balestrazzi did not do that, [Mr.] Del Vecchio cannot reliably estimate the cost of

repairing damages allegedly caused by the wind on September 10, 2017." *Id.* "Notwithstanding the fact that [Mr.] Balestrazzi was hired to determine the cause of the damage, [Mr.] Del Vecchio testified that he determined the scope for his damage estimate." *Id.* at 5 (internal citations omitted).

Defendant maintains that expert testimony is required to establish causation in property damage cases but Mr. Del Vecchio "is simply not qualified to offer an expert opinion on the cause of damages as he is not educated, licensed or trained as a forensic engineer." *Id.* at 5-6. It adds that this is "particularly true" given that Mr. Del Vecchio did not inspect the buildings until two and a half years after the loss. *Id.* at 6. In Defendant's view, because Mr. Del Vecchio "does not have the requisite expertise to identify the cause of damage, he should be precluded from offering an opinion as to the scope of damage caused by wind." *Id.*

Plaintiff responds that to "determine the cause, scope, and cost of repairing the hurricane damages," it retained Mr. Balestrazzi and Mr. Del Vecchio, and both "have extensive knowledge and experience in their fields and they appropriately worked together to develop the scope of necessary repairs in this case." ECF No. [57] at 1-2. Plaintiff asserts that Mr. Del Vecchio is a licensed general contractor since 1979; serves on the licensing board for the construction industry; he owns a construction consulting firm, in which the majority of its business involves construction management, including hiring architects and engineers; he previously owned two construction companies; and he was involved in building condominium buildings and other large projects. *Id.* at 3-4. According to Plaintiff, Mr. Del Vecchio's experience "allows him to be able to differentiate those damages that may result from the initial construction or wear and tear of the building from those that are event-related, such as a hurricane." *Id.* at 4. Plaintiff adds that Defendant's causation expert for window damages, Edward Morris, is a licensed general contractor like Mr. Del Vecchio,

and he does not have a professional engineering degree. Moreover, that individual's professional opinion is also based on his experience in the construction industry. *Id.* at 5.

Plaintiff correctly notes that a professional degree is not a prerequisite for expert testimony. It contends that Mr. Del Vecchio "did not act independently in determining the scope of the wind damage. He worked alongside" Mr. Balestrazzi, and Mr. Del Vecchio "and his team were on site with Mr. Balestrazzi and his team, and they spoke numerous times about this property." *Id.* Further, Mr. Del Vecchio "reviewed Mr. Balestrazzi's engineering report." *Id.* Mr. Balestrazzi testified that he discussed Mr. Del Vecchio's estimate with him, and he also informed Mr. Del Vecchio about the types of deficiencies that were event-related. *Id.* at 5-6. Plaintiff explains that Mr. Balestrazzi reviewed photographs taken by Mr. Del Vecchio's team "and identified with them which photographs showed event-related conditions similar to the conditions that he had observed during his inspections. Mr. Del Vecchio then took Mr. Balestrazzi's analysis and performed a count of the affected units in order to produce his damage assessment report." *Id.* at 6 (internal citations omitted). Thus, Plaintiff argues that "Mr. Balestrazzi identified the type of damage that occurred and the causation, and then Mr. Del Vecchio took that information to prepare an estimate for the cost of repairs." *Id.*

Plaintiff further challenges that in a "complex case," multiple experts may be necessary to establish a party's theory of liability, and it is "common in technical fields" for an expert to base an opinion in part "on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *Id.* (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (noting that "a physician may rely for a diagnosis on an x-ray taken by a radiologist, even though the physician is not an expert in radiology")). Plaintiff additionally maintains that cases cited by Defendant are

7

distinguishable. It concludes that Mr. Del Vecchio is "qualified to testify regarding the scope and price of the damages experienced by Plaintiff" and that he can "rely on the opinions of . . . Mr. Balestrazzi, in assisting him in determining the full scope of the damages." *Id.* at 7.

In reply, Defendant asserts that Mr. Del Vecchio "lacks the requisite education and experience to offer an opinion on the cause and scope of damage" and his estimate "cannot be admissible as the cost of repairing hurricane damage." ECF No. [62] at 1. It claims that Mr. Del Vecchio's "experience relates to constructing buildings, not determining the cause of damage," and "this is why Plaintiff hired an engineer, [Mr.] Balestrazzi, to determine the cause of the damage." *Id.* at 1-2. Defendant further contends that "a contractor is not qualified to offer an opinion on the issue of causation." *Id.* at 2. It also notes regarding its expert, Mr. Woodall, that "Plaintiff's attempt to question the credentials of Lexington's building consultant, Woodall, barely merits a response, as Woodall is being offered as an expert on the cost of repairs, not the scope of damage." *Id.* at 3.[3] Defendant concludes that it "agrees that [Mr.] Del Vecchio is qualified to testify on the cost of repairs, but the scope for his estimate must be provided by a qualified engineer. That is not the case here." *Id.*

Upon review, the Court does not find that Defendant has adequately shown that Mr. Del Vecchio is unqualified to testify regarding the scope of damages. First, the cases Defendant relies upon do not support the proposition that, as a matter of law, only a licensed engineer can testify as to property damage issues. For instance, in *Nix v. State Farm Fire & Cas. Co., Inc.*, 444 F. App'x 388 (11th Cir. 2011), although the court determined that the insureds failed to rebut the insurer's expert's testimony regarding the cause of a wall collapse, that was so because neither the insured nor the contractor that made temporary repairs "witnessed the wall collapse or had personal

---

[3] Defendant fails to address Plaintiff's argument regarding Mr. Morris, not Mr. Woodall.

knowledge about the construction of the" insureds' home. *Id.* at 390. Likewise, in *Greer v. Onwers Ins. Co.*, 434 F. Supp. 2d 1267, 1283 n.12 (N.D. Fla. 2006), the court noted that the contractor could not offer expert opinion on damage causation because the contractor "repeatedly explained" that he made no determination as to the cause of damage and he admitted that "he would not have been qualified to do so." *Id.* These decisions do not broadly stand for the notion that only an engineer is qualified to address matters related to causation. In fact, in *Coursey Bldg. Assocs. v. Baker*, 301 S.E.2d 688 (Ga. App. 1983), which Defendant cites in the Motion and Reply, the appellate court rejected the argument that the "trial court erred in permitting Lagerstrom, who was qualified to give expert testimony as a 'structural engineer,' to state his opinion on the standard of care expected of a *contractor*." *Id.* at 689 (emphasis in original).

Second, an individual may be qualified as an expert based on one's knowledge, skill, experience, or training irrespective of one's academic degrees. Defendant does not demonstrate how Mr. Del Vecchio's extensive background in the construction industry makes him unqualified to testify as to the scope of damages and costs of repairs other than to note that he is not a professional engineer. In this respect, Defendant does not point to anything in Mr. Del Vecchio's experiences, knowledge, and background that render him incapable of evaluating the scope of the hurricane damage. Accordingly, the Motion is denied on this point.

### B.     Plaintiff's alleged damages are not limited to the units only observed by Mr. Balestrazzi himself

Defendant argues that Plaintiff's recoverable damages should be limited to only those units that Mr. Balestrazzi personally inspected. ECF No. [54] at 6. It contends, without elaboration, that Plaintiff "should not be permitted to pursue alleged wind-related damages outside of the units and common areas inspected by its engineer[.]" *Id.* at 7. In this respect, Defendant asserts that Mr. Del Vecchio's estimate is "inherently unreliable as the scope of wind-damage was not determined by

an engineer." *Id.* at 7. Thus, it posits that Plaintiff's recovery "should be limited to the cost of repairing damages that an engineer determined were caused by wind." *Id.*

In response, Plaintiff asserts that under Rule 703, an expert may rely on facts and data that the expert has been made aware of in reaching its opinions. ECF No. [57] at 8 (citing *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) ("an expert may rely on data that she did not personally collect")). Further, it notes that personally visiting the property is not required to provide expert testimony. *Id.* (citation omitted). According to Plaintiff, the condominium complex includes over 400 units, Mr. Balestrazzi testified that he spent two days at the buildings, and he saw a representative portion along with members of his team. *Id.* at 8-9. Additionally, he reviewed photographs of remaining units taken by Mr. Del Vecchio's team. *Id.* at 9.

Plaintiff adds that Mr. Del Vecchio's team and Mr. Balestrazzi's teams "worked in conjunction to identify the cause and scope of the damages at the property." *Id.* Plaintiff also points to Mr. Balestrazzi's testimony where he stated that, regarding instructions he gave to Mr. Del Vecchio for his estimate, Mr. Balestrazzi and his team identified the "type of deficiencies that were event-related. And then what we did for the units that we didn't have access to . . . we went back to the photos that Mr. Del Vecchio's team took and we looked at the deficiencies and we identified with them which ones were similar to the ones that we inspected. And then based on that, [Mr. Del Vecchio] performed a count on the total number of units and he produced his report." *Id.* (citing ECF No. [54-2] at 49-50). Further, Plaintiff asserts that it was "permissible and appropriate" for its experts to work together. *Id.* In reply, Defendant maintains that Mr. Del Vecchio's testimony is "not reasonably reliable inasmuch as the scope of wind damage was not determined by a qualified expert." ECF No. [62] at 4.

Case No. 19-cv-61365-BLOOM/Valle

Upon review, the Court finds Defendant's argument unconvincing. Defendant fails to establish why Mr. Del Vecchio is not permitted to rely on Mr. Balestrazzi and his team's identification of wind damage, which was then used to prepare an estimate for the cost of repairs. ECF No. [54-2] at 52. Indeed, Defendant does not rebut Mr. Del Vecchio's testimony that part of the investigative process in construction involves "reviewing other people's work[.]" ECF No. [57] (citation omitted). Further, Defendant does not establish how anything in Mr. Del Vecchio's report is inherently unreliable nor does it counter any of the testimony Plaintiffs provide regarding the experts' joint work, which included speaking with each other and ensuring that the scope of damage identified by Mr. Balestrazzi was "consistent" with Mr. Del Vecchio's scope of damages. ECF No. [54-3] at 112-13. In particular, as Mr. Del Vecchio stated, Mr. Balestrazzi's team "was out there with us as we were going through the windows inspections and the roof inspections, so they saw what we saw." *Id.* at 112.

Accordingly, in light of the Court's "considerable leeway" and broad discretion regarding its gatekeeping role, the Court rejects Defendant's effort to preclude Mr. Del Vecchio's opinion testimony and to limit Plaintiff's presentation of damages to only the handful of units that Mr. Balestrazzi personally inspected.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [57]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 30, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 19-cv-61365-BLOOM/Valle

Copies to:

Counsel of Record

12